# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

BALBOA THREADWORKS, INC., et al., )
)
)
         **Plaintiffs,** )
)
v. ) Case No. 05-1157-JTM-DWB
)
RONALD A. STUCKY, et al., )
)
         **Defendants.** )
)

## MEMORANDUM AND ORDER

Plaintiffs bring this action pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et. seq.* and the Lanham Act, 15 U.S.C. §§ 1051, *et. seq.*, claiming that Defendants wrongfully copied digital embroidery designs and then sold the designs to at least one third party. (Doc. 4.) Defendants have filed a Counterclaim and Amended Counterclaim against Plaintiffs (Doc. 13, 25), and a Third Party Complaint (Doc. 14) against Darlene Dando, the individual to whom Defendants allegedly sold the embroidery design. Defendants claim that Plaintiffs and Dando conspired to fraudulently induce Defendant Sherry Stucky to transmit the design and allege fraud and a civil conspiracy.

### *Procedural Background*

A scheduling conference was held on November 29, 2005, and an Initial Scheduling Order (Doc. 26) was entered which established deadlines for mediation, the exchange of Fed.R.Civ.P. 26(a) disclosures and the service of paper discovery pursuant to Fed.R.Civ.P. 33 and 34.  The Rule 26(a) disclosures, and supplemental disclosures, were exchanged by the parties.  (Doc's 28, 29, 38, 51.)  A status conference was held on December 13, 2005, concerning a dispute about the allocation of mediation costs (Doc. 30), and another status conference was held on December 22, 2005 (Doc. 36), concerning disputes as to the terms of a protective order.  A Protective Order was ultimately submitted and filed.  (Doc. 50.)  The parties participated in a mediation conference on January 26, 2006, which was not successful.  (Doc. 48.)

Prior to the mediation conference, the parties served and responded to paper discovery (Doc's 31, 32, 40, 42, 44, 45, 46.)  Another status conference was held on February 3, 2006. (Doc. 47.)  At that conference, the parties advised that they were working on a protocol for conducting the mirror imaging of computers.  They were having disagreements, however, about *which* computers should be mirror imaged.  Another status conference was set for February 24, 2006, to report on whether agreement had been reached about which computers to image.  The parties

were also urged to meet and confer about a search protocol to be used to search the mirror images. The Court also suspended the time for filing motions to compel concerning the initial round of paper discovery.

At the February 24, 2006, status conference (Doc. 52), the parties reported that they still could not agree on *which* specific computers and/or related hardware and CD's were to be imaged. A date was set for another telephone conference on March 9, 2006, to consider that issue. Both parties submitted letter briefs (not filed) concerning the imaging issue, copies of which are attachments to this Memorandum and Order. At the March 9, 2006, conference, the Court heard argument concerning which computers should be mirror imaged. After hearing argument and considering the letter briefs of the parties, the Court is now prepared to rule on this issue.

### *The Parties' Positions*

The dispute as to which computers and related hardware are to be mirror imaged centers on machines owned by Defendants Ronald and Sherry Stucky.[1] Sherry operates an embroidery business and uses a computer (a Hewlitt Packard P.C.) in that business. She also has another computer which she claims is not used in the business. Finally, she has a laptop which connects to her embroidery

---

[1] Plaintiffs have apparently agreed that all of their computers can be mirror imaged, and the same is true of the third-party, Darlene Dando.

machine and controls the patterns being created by that machine.  While Sherry does not object to the mirror imaging of her business computer, she does object to any mirror images of the other computer.  It is somewhat unclear to the Court whether she objects to a mirror image of the laptop unit or not.

Sherry's husband, Ronald, has several computers, although the Court has not been provided with a precise listing of how many or what kind of units he may have.  Apparently he uses one computer regularly, but may not use the others on a regular basis because they are older.  Ronald objects to any of his computers being the subject of mirror imaging, arguing that he is not engaged in the embroidery business and his computers are not used in the business.[2]  Ronald argues that there is no showing by Plaintiffs that any information on his computers would be calculated to lead to the discovery of admissible evidence in this case.

Plaintiffs argue that any of the Defendants' computers could have been used to download copyrighted embroidery patterns and all of Defendants' computers should therefore be mirror imaged in order to preserve any relevant information pertaining to this case.  Plaintiffs argue that Ronald has been joined as a party as an alleged contributory infringer, and that he participated to some degree in the

---

[2] All of Defendants' computers are stand-alone units and are not part of a Local Area Network (LAN).  Although no one has specifically addressed the issue, the Court assumes that any of the computers could access the Internet via dial up modems, WIFI, etc.

embroidery business by attending shows with his wife and being involved in the purchase of embroidery equipment.  Plaintiffs also urge that they have received information via third parties that Defendants have already "erased" or "deleted" information from some of their computers.  No affidavits or testimony concerning these allegations were presented.  Plaintiffs do, however, point to one document – an e-mail printed on Ronald's header – that was received during document production in this case as evidence that Ronald has used his computer in connection with the embroidery business.

Defendants presented an affidavit from Sherry Stucky which explains why the above-referenced e-mail has Ronald Stucky's header on it.  A copy of the e-mail is attached to the affidavit.  Basically, the affidavit recites that when Darlene Dando received the allegedly infringing copy of an embroidery pattern belonging to Plaintiffs, Dando refused to pay Stucky for it by stopping payment through the PayPal system.  PayPal then e-mailed Sherry Stucky notice of this fact and she sought her husband's assistance in drafting a reply.  In order to do so, she forwarded the PayPal e-mail to Ronald; he accessed it via his computer and drafted a reply; he then printed a copy of that reply and gave it to Sherry rather than sending it back to her via e-mail.

### *Discussion*

It is not unusual for a court to enter an order requiring the mirror imaging of the hard drives of any computers that contain documents responsive to an opposing party's request for production of documents. *See e.g.,* ***Communications Center, Inc. v. Hewitt,*** 2005 WL 3277983 at * 1 (E.D. Cal., Apr. 5, 2005). A "mirror image" is generally described as "a forensic duplicate, which replicates bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive." *Id.*[3] Thus, in similar cases where trade secrets and electronic evidence are both involved, the Courts have granted permission to obtain mirror images of the computer equipment which may contain electronic data related to the alleged violation. *See e.g.,* ***Physicians Interactive v. Lathian Systems, Inc.,*** 2003 WL 23018270 at * 10 (E.D.Va., Dec. 5, 2003); ***Antioch Co. v. Scrapbook Borders, Inc.,*** 210 F.R.D. 645, 651-53 (D.Minn. 2002). This is one method of assuring the preservation of evidence since electronic evidence can easily be erased and manipulated, either intentionally or unintentionally (by overwriting through continued use of the computer).

---

[3] For descriptions of these computer terms, *see* generally ***United States v. Triumph Captial Group, Inc.,*** 211 F.R.D. 31, 45-47 at n. 4-12 (D. Conn. 2002). *See also, The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production,* (The Sedona Conference, 2004 Annot. Version), Appendix A at 128-1308.

On the other hand, Courts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature.  Thus, in *McCurdy Group v. American Biomedical Group, Inc.* 9 Fed.Appx. 822, 2001 WL 536974 (10th Cir. 2001), the District Court (and then the Court of Appeals) upheld the magistrate judge's ruling which denied a request by ABGI to require MG to produce all of its computer hard drives (presumably for copying and/or mirror imaging).  MG had agreed to produce a copy of the printouts from its hard drive for nonprivileged documents related to ABGI, plus a zip drive of those same documents.  Dissatisfied with MG's response, ABGI moved to compel production of the actual computer disc drives. In support of its motion, ABGI asserted that it should be permitted to examine the disc drives to determine whether they contained any memoranda referring to a specific letter, which MG denied receiving. ABGI also asserted that it should be permitted to examine the disc drives to determine whether they contained any "memoranda or correspondence" to ABGI's competitors.  In upholding the ruling of the magistrate judge and the district judge, the Court of Appeals noted:

> ABGI has never explained, either in the district court or
> on appeal, why it should be allowed to conduct a physical
> inspection of MG's computer hard drive(s). *Although
> ABGI was apparently skeptical that MG produced copies*

> *of all relevant and nonprivileged documents from the hard drive(s), that reason alone is not sufficient to warrant such a drastic discovery measure.* Further, ABGI has not explained why inspection of the zip drive and/or inspection of the hard drive by Tri Logic would not have been sufficient to satisfy its concerns.

9 Fed.Appx. at 831, 2001 WL 536974, * 7 (emphasis added).  *But cf.* ***Simon Property Group L.P. v. MySimon, Inc.,*** 194 F.R.D. 639, 641 (S.D.Ind. 2000) (allowing plaintiff to mirror image defendant's computers where there were "troubling discrepancies with respect to defendant's document production.").

In this case, the issue of which computers shall be subject to mirror imaging arises through initial case management conferences rather than through the more formal means of a motion to compel discovery or a motion for entry of a preservation order.  To some extent, this places the Court at a disadvantage since it does not know precisely the scope of the parties' paper discovery requests which have preceded the current dispute or the completeness of any discovery responses. Those matters have all been reserved for later determination if the parties cannot resolve any pending disputes.

Furthermore, Plaintiffs have produced no affidavits to support their arguments that Defendants have purportedly deleted information from some of their computers.  Instead, they submit an affidavit of a computer expert which only outlines, in general terms, why he believes it is important to collect digital and

electronic evidence early in a case in order to avoid the possibility that relevant files are deleted or other residual data is overwritten or otherwise destroyed during normal computer use.

Similarly, Defendants argue, through counsel, that several of their computers were not used in the embroidery business, but they have not submitted any affidavits to support those general conclusions. While they did submit the affidavit of Sherry Stucky to show how one particular document of Ronald's was created, it goes no further.

After considering all of the arguments and affidavits, the Court finds that it is reasonable to conclude that some relevant evidence concerning the claims and defenses raised by the parties in this case or evidence relevant to the subject matter of this action may be found on any of Defendants' computers. The fact that Ronald Stucky used one of his computers to draft a document that is related to alleged acts of infringement in this case (albeit created after the date of the alleged infringement) runs contrary to claims that his computers were never used in connection with the embroidery business. Furthermore, because the alleged infringement in this case is claimed to have occurred through the use of computers to download copyrighted material, the importance and relevance of computer evidence is particularly important. For this reason, the Court will order that all of

Defendants' computers and peripheral equipment, such as ZIP Drives, shall be made available for mirror imaging, at Plaintiffs' expense, in accordance with the protocol previously agreed to by the parties.[4]

As other courts have noted, the challenge here is to arrange for the mirror imaging to be undertaken without undue burden of Defendants.  *See* **Simon Property Group L.P. v. MySimon, Inc.,** 194 F.R.D. 639, 641 (S.D.Ind. 2000) (discussing a procedure which would allow plaintiff, at its own expense, to image the computers of four individuals so as not to cause an undue burden on defendant either in cost or in terms of business interruption).  Here, Defendants have not argued that the imaging process will cause a substantial interruption of their embroidery business. And, because the cost of these mirror images is being borne entirely by Plaintiffs, the Court concludes that the process of mirror imaging of Defendants' computers will not be an undue burden to Defendants.  Defendants argue that they should be entitled to be present during the imaging process, and to

---

[4] Because the parties have apparently agreed on the protocol for obtaining a mirror image of the computers, the Court does not need to consider the appointment of a neutral court computer expert to accomplish the imaging.

have a computer expert present to observe that process,[5] which will be a cost to them.  However, there is no showing that this cost will be an *undue* burden on Defendants.  Since Defendants have already agreed that *some* of their computers could be imaged, the imaging of all of Defendants' computers can presumably be accomplished at the same time and without expending an unreasonable amount of additional time.  Finally, the confidentiality of information on the computers which is *not* relevant to the claims or defenses of either party or to the subject matter of this case can be protected through both the terms of the existing Protective Order (Doc. 52) and through the design of the search protocol to be used in searching the mirror images.

No searches of the mirror images obtained through the use of this Order shall be conducted until the parties have agreed on an appropriate search protocol that will address the issue of protection of attorney client privilege and non-business related personal information which may be located on the computer hard drives.  Also, the Court would consider approving a procedure where the agreed search protocol is used sequentially on the various computers, with the first

---

[5] It is normal to allow a party whose computer is being imaged to be present during the imaging process.  *See e.g.,* **Fox Industries, Inc. v. Gurovich**, 2004 WL 2348365, * 3 (E.D.N.Y., August 25, 2004) (allowing a computer expert to mirror image defendant's computer and specifically allowing both plaintiff's counsel and defendant's counsel to be present if they so desired.)

-11-

searches being run on computers which were admittedly used in the embroidery business and the laptop that operates the embroidery machine. Then, based upon the results of those searches, consideration could be given as to whether searches of some or all of Ronald's computers appear justified or not, or whether a different search protocol for those computers would be warranted.  Those are matters that counsel should discuss as they work to define the search protocol to be used.

As to the formulation of a search protocol, whether one using key word searches and/or other search procedures, the parties are directed to meet and confer in an attempt to agree on an appropriate protocol, and should lean heavily on their respective computer experts in designing such a protocol.  Numerous types and varieties of search protocols have been discussed and adopted by courts and these may guide the parties in designing a search protocol to be used in this case.  *See e.g.,* **Rowe Entertainment v. William Morris Agency,** 205 F.R.D. 421, 432-22 (S.D.N.Y. 2002); **Simon Property Group L.P. v. MySimon, Inc.,** 194 F.R.D. 639, 641-44 (S.D.Ind. 2000); **Playboy Enterprises v. Welles,** 60 F.Supp.2d 1050, 1053-55 (S.D.Cal. 1999);   **Antioch Co. v. Scrapbook Borders, Inc.,** 210 F.R.D. 645, 653-54 (D.Minn. 2002).

*Conclusion*

For the reasons set out above, the Court orders Defendants to make available all of their computers and related computer hardware such as ZIP drives, etc., for mirror imaging by Plaintiffs, at Plaintiffs' cost and expense.  The process of obtaining the mirror imaging shall be done in accordance with the protocol which has previously been agreed to by counsel.

Counsel are also directed to meet and confer, using their computer experts, in an attempt to design a search protocol to be used in searching the mirror images for information which is relevant to the claims and defenses in this case and the subject matter of the present case, while preserving any claims of attorney client privilege and protecting the confidentiality of personal information located on the mirror images which is not related to the claims and defenses or the subject matter of the present case.  To the extent necessary, the parties should consider any amendments or supplements that might be advisable to the present Protective Order (Doc. 50) in order to protect the confidentiality of such personal information.

In order to facilitate discussion of an appropriate search protocol, Plaintiffs' counsel shall forward to Defendants' counsel a draft of a proposed search protocol by **April 12, 2006.**  If the proposed protocol employs a process of "key word"

searching, Plaintiffs' counsel should also include a proposed list of search terms to be used. Counsel should be prepared to discuss any disputes concerning the formulation of the search protocol at the next telephone status conference set for **April 17, 2006 at 2:00 p.m.**

No search of the mirror images obtained by means of this Order shall be conducted until the parties have either agreed upon an appropriate search protocol or the Court, after hearing argument from the parties and their computer experts, has approved a search protocol.

IT IS SO ORDERED.

Dated at Wichita, Kansas, this 24th day of March, 2006.

    s/ Donald W. Bostwick
DONALD W. BOSTWICK
U.S. MAGISTRATE JUDGE


Attached Letter Briefs and Affidavits:

| | |
|---|---|
| Attachment 1 | E-mail letter dated March 7, 2006 from Susan R. Schrag with accompanying Affidavit of Sherry J. Stucky dated March 6, 2006 and E-mail document Bates No S41-42; |
| Attachment 2 | E-mail letter dated March 8, 2006 from Joan K. Archer with accompanying Affidavit of John R. Mallery dated March 8, 2006, and E-mail letter from Joan K. Archer to Susan R. Schrag dated February 1, 2006. |